# Lake Street Elevated R. R. Co. v. Kate Burgess.

1. ORDINARY CARE—*What the Exercise of, Does Not Require.*—The exercise of ordinary care does not require that passengers on street cars should be all the time on the lookout for deep and unguarded holes in or close to the entrance of such cars, nor to watch for unheralded removal of safeguards formerly existing.

2. DAMAGES—*Where $2,500 Is Not Excessive.*—Where the evidence tends to show that in consequence of an accident, a lady passenger on an elevated railway was made permanently lame, and up to the time of the trial, three and a half years afterward, her left arm was disabled so that she could not use it as she formerly did, that an abscess had formed on her ankle as a result of the accident, and that she not only suffered great pain but was at the time of the trial under medical treatment for the injuries received, a judgment for $2,500 is not excessive.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed January 21, 1902.

**Statement.**—This was an action brought by appellee to recover damages for injuries by her, a passenger, sustained in changing, as she was required to do, from a Market street to a Randolph street car of appellant's road. She testified :

" I got on the train that transfers you at Canal and Lake streets. When I got to Canal street I sat down for a few minutes and waited for the train to come to take me to Austin. The car came up and I went to get on the car and I walked just as calmly as I always do, and I took hold of the railing to get in, and with that I was transferred into between the cars. I went down like a flash in between the wheels and I thought every minute was my last. I couldn't see because it was dark. I could hear the voices saying, ' Can you help her up.? ' They tried to pull me up and after a while they got me up from between the cars and helped me over to a seat and I sat down there. I fell in between the motor and the cars. I can't tell how many feet it was because I went down so suddenly. I can't say whether it was before or after sunset. I don't know whether there were any lights on the depot platform or by the depot platform. I suppose there was some light. It was dark

on the platform. Of course in that time of the night the boards were somewhat dark and numbers of people passing at the time, and of course I naturally supposed when I saw the gate open that I was going on the platform."

" Q.   What I want to get at is, do you say you saw that space there as you stepped into it—saw that opening ?   A. Why, of course, I thought it was—

Q.   It was an opening about how wide ?   A.   The opening I went through was the same width as the other one.

Q.   And you knew, whether it was a motor car in the front or in the rear, that that space was always between the two cars, didn't you ?   A.   It was only changed the day before.   I think there was a steam car there.   They were fixing the station there on Fifth avenue and they had taken the steam car off.   I would not have gone through only they changed from steam to motor car and I think it was only the day before.   I had seen these motor cars before this day.   I knew how they were made.   I knew motor boxes were on each end of the car platforms where the motormen stand when the car was running.   I never noticed where the motormen stayed on the car, because I always took the car and I never missed the step, and I supposed I had been fifteen years taking cars and standing on the step, and I never made a false step, and I didn't know anything about the car.   I was sitting down, and the car came up and I saw this gate open, and that one open, and I naturally supposed that that was the gate to go into.   I thought it was a platform.   It was dark."

A witness for the defendant testified :

" I was under the impression that this lady wanted to get on the same platform that I was attempting to get on and I stepped aside, and apparently she had a misconception of where she was going, and she stepped into the space between the tail end of the motor car and the front part of the car that I was trying to get on.   I hollered to the conductor not to start the car and I hailed the gentleman from the other end of the platform, who was a sort of a train starter, and he came running up, and the two of us, as best we could, extricated the lady.   She was wedged in pretty tightly between the two cars.   We pulled her out.   She was not able to proceed on that train.   She was, I would state, at least semi-unconscious and suffering from nervous strain, etc., and I told the trainmen that I would wait over."   " I should say that the space that this lady fell into was about twenty-four or twenty-six inches wide, somewhere along there.   It

was about the same width as the gate and opening. Being V-shaped it diverts your vision and appears more narrow; but it is about the same width."

Frank Canfield, at the time of the accident a conductor for appellant, being called by it, testified:

" My attention was called to the fact that the gate between the two cars was missing. I saw her approach the entrance, and knowing that the gate was missing I used some precaution. As I seen her approach the car I put my hand out and said, ' Stop, lady,' or ' Look out, lady;' I don't remember which word was used, but I remember of repeating the word, whichever it was. I tried to prevent the accident, but she stepped down into the opening and I couldn't prevent it."

It did not appear that the plaintiff heard or knew of this attempted warning.

The defendant introduced evidence tending to show that at the time of the accident the sun had not set and it was light. The plaintiff recovered a judgment for $2,500.

CLARENCE KNIGHT and WILLIAM G. ADAMS, attorneys for appellant.

WILLIAM A. DOYLE and THOMAS E. ROONEY, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

Appellant was bound to exercise the highest diligence to prevent injury to appellee.

Without notice, they removed a gate that theretofore had prevented passengers from walking into the opening between its cars, and left an open space some two feet in width into which any passenger might easily, and appellee did, fall. There was no failure upon her part to exercise ordinary care. Ordinary care does not require that passengers be all the while on the lookout for deep unguarded holes in or close to the entrance to cars or to watch for unheralded removal of safeguards formerly existing. Taking the defendant's evidence above, there is clearly shown great negligence upon the part of appellant.

The damages awarded are not, under the evidence, excessive.

Appellant complains of the refusal of the court to give the eighth and fifteenth instructions asked by it. The substance of the eighth was given in the second and fifth instructions. Instructions numbered 4½, 10 and 11, given at the instance of the defendant, embrace substantially all contained in the fifteenth. Twenty-one instructions asked by the plaintiff were given, and appellant has no just reason for complaint in this regard.

The evidence tended to show that as a consequence of the accident appellee was made permanently lame; that up to the time of the trial, three and a half years after the injury, her left arm was disabled so that she could not use it as she formerly did; that an abscess formed upon her ankle as a result of her fall and that she not only then and thereafter suffered great pain, but was, at the trial, still being treated for the injuries she received.

The judgment is not excessive.

Appellee was clearly entitled to a verdict and had one been rendered for the defendant it would have been the duty of the court to set it aside.

The judgment of the Circuit Court is affirmed.